IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

UNDERSEA RECOVERY CORPORATION,

　　Plaintiff,

　　　　　　　v.

MADERO HOLDING, S.A. de C.V.,

　　Defendant.

Civil Action No.
1:19-cv-00286-SDG

**OPINION AND ORDER**

This matter is before the Court on Plaintiff UnderSea Recovery Corporation's motion for service by publication [ECF 11]. For the following reasons, UnderSea's motion is **GRANTED**.

**I.　　BACKGROUND**

UnderSea is a corporation incorporated in Nevada with its principal place of business in Atlanta, Georgia.[1] UnderSea's business involves pursuing archeologically guided explorations and recovering shipwrecks throughout the world.[2] Madero is a corporation incorporated and maintaining its principal place of business in Mexico.[3]

---

[1]　ECF 1, ¶ 2.

[2]　*Id.* ¶ 7.

[3]　*Id.* ¶ 3.

According to UnderSea, it entered into an agreement with Madero on February 8, 2013 pursuant to which Madero agreed to deliver $10 million in sovereign bonds issued by the Central Bank of Venezuela in exchange for an interest in Pedro Bank Shipwreck Exploration and Excavation, LCC ("Pedro"), as well as a warrant for 17% of UnderSea's common stock.[4] Subsequently, UnderSea issued Madero a Stock Purchase Warrant ("Warrant") and the parties signed the Operating Agreement for Pedro.[5] Despite numerous assurances, UnderSea alleges Madero has failed to make the required payments to UnderSea.[6]

On January 15, 2019, UnderSea initiated this action against Madero, asserting claims for breach of contract, prejudgment interest pursuant to O.C.G.A. § 7-4-16, and attorneys' fees pursuant to O.C.G.A. § 13-6-11.[7] Despite its efforts, UnderSea has not been able to properly serve Madero with process.[8] On December 26, 2019, UnderSea filed the instant motion to effect service by publication.[9]

---

4   *Id.* ¶ 9.
5   *Id.* ¶¶ 13–15.
6   *Id.* ¶ 19.
7   *Id.* ¶¶ 23–29.
8   ECF 12 (UnderSea's response to Aug. 27, 2019 Order to show proof of service).
9   ECF 11.

## II. DISCUSSION

### a. Legal Standard Governing Service of Process on International Corporation by Publication

Two Federal Rules of Civil Procedure apply to the service of process on an entity located outside of the jurisdiction of the United States: Rule 4(f) (Service upon Individuals in a Foreign Country) and Rule 4(h) (Service of Process upon Corporations and Associations). *Prewitt Enters., Inc. v. Org. of Petroleum Exporting Countries*, 353 F.3d 916, 921 (11th Cir. 2003). According to Rule 4(h)(2):

> Unless federal law provides otherwise . . . a domestic or foreign corporation, or a partnership or other unincorporated association that is subject to suit under a common name, must be served . . . (2) at a place not within any judicial district of the United States, in any manner prescribed by Rule 4(f) for serving an individual, except personal delivery under (f)(2)(C)(i).

Put another way, a corporation located outside the United States—such as Madero—may be served in any manner authorized by Rule 4(f) for serving individuals in a foreign country, except for personal delivery.

Rule 4(f), in turn, states:

> Unless federal law provides otherwise, an individual . . . may be served at a place not within any judicial district of the United States:
>
> (1) by any internationally agreed means of service that is reasonably calculated to give notice, such as those

> authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents;
>
> (2) if there is no internationally agreed means, or if an international agreement allows but does not specify other means, by a method that is reasonably calculated to give notice: (A) as prescribed by the foreign country's law for service in that country in an action in its courts of general jurisdiction; (B) as the foreign authority directs in response to a letter rogatory or letter of request; or . . .
>
> (3) by other means not prohibited by international agreement, as the court orders.

UnderSea relies solely on Rule 4(f)(3) to request that the Court permit service on Madero by publication.

The Court is afforded wide discretion in ordering service of process under Rule 4(f)(3). *Drummond Co., Inc. v. Collingsworth*, No. 2:15-cv-506-RDP, 2017 WL 3268907, at *15 (N.D. Ala. Aug. 1, 2017). *See also Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1016 (9th Cir. 2002) (permitting service of process by email on Costa Rican corporation and holding Rule 4(f) does not create a hierarchy of service methods: "[S]ervice of process under Rule 4(f)(3) is neither a last resort nor extraordinary relief. . . . It is merely one means among several which enables service of process on an international defendant."); *Smith v. Islamic Emirate of Afghanistan*, No. 01 CIV 10132 (HB), 2001 WL 1658211, at *2 (S.D.N.Y. Dec. 26, 2001) ("[W]hat constitutes appropriate service will vary depending upon the particular

circumstances of the case. . . . [T]he only limit on a court's discretion . . . is that the method of service not be prohibited by an international agreement and that it comply with the Due Process Clause of the Fourteenth Amendment."); *In re Int'l Telemedia Assocs., Inc.*, 245 B.R. 713, 719 (Bankr. N.D. Ga. 2000) ("[S]o long as the particular method of service adopted is not contrary to international agreement, Rule 4(f)(3) provides the Court with . . . flexibility and discretion . . . empowering courts to fit the manner of service utilized to the facts and circumstances of the particular case.").

At bottom, alternative service is proper if "the method of service is (1) not prohibited by international agreement, and (2) is reasonably calculated to apprise the interested parties of the pendency of the action and afford them an opportunity to present their objections." *Drummond*, 2017 WL 3268907, at *15. The requested alternative service must comply with the Constitution's due process provisions, which require "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950).

### b. Service by Publication Is Not Prohibited By International Agreement.

First, the United State and Mexico are both signatories to the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents ("Hague Convention"). Hague Convention on Private International Law, HCCH Members, https://www.hcch.net/en/states/hcch-members (last visited May 13, 2020) (listing the contracting states to the Hague Convention). The Hague Convention is "a multinational treaty formed in 1965 for the purpose of creating an appropriate means to ensure that judicial and extrajudicial documents to be served abroad shall be brought to the notice of the addressee in sufficient time." *Nuovo Pignone, SpA v. STORMAN ASIA M/V*, 310 F.3d 374, 383 (5th Cir. 2002), abrogated on other grounds by *Water Splash, Inc. v. Menon*, 137 S. Ct. 1504 (2017).

By its own terms, the "Hague Convention does not specifically preclude . . . publication service." *Chanel, Inc. v. feiwu1*, No. 18-CV-60627, 2018 WL 7080028, at *1 (S.D. Fla. Mar. 27, 2018). However, "[t]he primary method of service authorized by the Hague Convention requires service through a member state's 'Central Authority.'" *Compass Bank v. Katz*, 287 F.R.D. 392, 396 (S.D. Tex. 2012). *See also Nuovo*, 310 F.3d at 383 ("Articles 2 through 7 [of the Hague Convention] require each signatory nation to establish a 'Central Authority' to act as an agent to receive request of service, arrange for service of documents, and return proofs

of service."); *Mitchell v. Volkswagen Grp. of Am., Inc.*, 753 F. Supp. 2d 1264, 1269 (N.D. Ga. 2010) ("The general method of service provided for in the Hague Convention requires Plaintiffs to send documents to Mexico's designated central authority, which then serves the documents according to its own law."). Since Mexico is a signatory, compliance with the Hague Convention is mandatory. *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 705 (1988). *See also Opella v. Rullan*, No. 10-21134-CIV, 2011 WL 2600707, at *5 (S.D. Fla. June 29, 2011) ("The only form of service available in Mexico under the Hague Service Convention is through the Central Authority."); *OGM, Inc. v. Televisa, S.A. de C.V.*, No. CV 08-5742-JFW JCX, 2009 WL 1025971, at *1 (C.D. Cal. Apr. 15, 2009) ("Because the United States and Mexico are both signatories to the Hague Convention, the Hague Convention provides the exclusive means by which Plaintiff can serve Televisa.").

There are situations when a party may nonetheless be exempt from strict compliance with the Hague Convention. Article I of the Hague Convention states: "This Convention shall not apply where the address of the person to be served with the document is not known." Convention Done at the Hague Nov. 15, 1965, T.I.A.S. No. 6638 (Feb. 10, 1969). *See also BP Prod. N. Am., Inc. v. Dagra*, 236 F.R.D. 270, 271 (E.D. Va. 2006) ("The Hague Convention does not apply in cases where

the address of the foreign party to be served is unknown."). As noted by the Southern District of Florida, there is "no binding precedent that establishes a standard for determining when a plaintiff 'knew' the address of the person to be served, in the context of the exemption in Article 1 of the Hague Service Convention." *Opella*, 2011 WL 2600707, at *5. The *Opella* court adopted the following standard: "[A]n address is not 'known' within Article I of the Convention only when it is unknown to the plaintiff after the plaintiff exercised reasonable diligence in attempting to discover that address." *Id*. This standard has garnered a general consensus among other federal courts. *E.g., Mendoza v. PGT Trucking Inc.*, No. 1:18-cv-0432-LY-ML, 2019 WL 6048031, at *2 (W.D. Tex. Apr. 29, 2019) ("It is the plaintiff's burden to demonstrate that the address of defendant it seeks to serve outside the confines of the Hague Convention is 'unknown.' Courts look to the efforts made by plaintiffs to discover whether an address is 'unknown.'") (internal citations omitted); *Luxottica Grp. S.p.A. v. P'ships & Unincorporated Ass'ns Identified on Schedule "A,"* 391 F. Supp. 3d 816, 822 (N.D. Ill. 2019) ("A plaintiff cannot close its eyes to the obvious to avoid the Hague Service Convention; the plaintiff must make reasonably diligent efforts to learn the defendant's mailing address."); *Backjoy Orthotics, LLC v. Forvic Int'l Inc.*, No. 6:14-cv-249-ORL-41TBS, 2016 WL 7664290, at *7 (M.D. Fla. Mar. 7, 2016) ("The Court is

satisfied that Backjoy exercised reasonable diligence in determining Defendants' addresses; Backjoy's failures indicate that Defendants' addresses were not known, and therefore, the Hague Convention does not govern."); *Indagro, S.A. v. Nilva*, No. 07-cv-03742 SDW MCA, 2014 WL 1515587, at *4 (D.N.J. Apr. 17, 2014) ("The case law on the issue of whether or not an address is 'known' under Article One of the Convention is not extensive. However, those courts who have dealt with the issue have generally found that an address is 'not known' if a plaintiff exercised reasonable diligence in attempting to discover the address and was unsuccessful in doing so."); *Compass Bank*, 287 F.R.D. at 394 (S.D. Tex. 2012) (collecting cases) ("In deciding whether defendants' addresses are 'unknown,' courts have repeatedly looked to the efforts plaintiffs have put forth in attempting to discover said addresses.").

Here, UnderSea argues that Madero's address is unknown. UnderSea states it has attempted to serve Madero through the process outlined in the Hague Convention at two different locations Madero previously represented as its mailing address.[10] First, UnderSea directed the Mexican Central Authority to serve Madero at its represented office location in Mexico City.[11] The process server could

---

10   ECF 6; ECF 7.

11   ECF 11-2.

not locate Madero at that address. In fact, according to an individual working at that location, Madero vacated the premises approximately four years prior to the service attempt.[12] UnderSea then directed the Mexican Central Authority to serve Madero at its second listed address in the Mexico City International Airport.[13] Madero likewise could not be located there.[14] Subsequently, UnderSea contends it has "searched for other addresses where [Madero] may be served but has not located anything."[15] Specifically, UnderSea ran a search for Madero's address using at least seven different databases, all of which did not reveal an alternative address for Madero.[16] UnderSea additionally searched for Madero's address in the official registry records for companies in Mexico, a similarly fruitless endeavor.[17]

Based on UnderSea's representations, the Court is satisfied that UnderSea exercised reasonable diligence in attempting to serve Madero and locate its address. Rather than turning a blind eye to its obligations, UnderSea has pursued numerous unsuccessful avenues to locate Madero. UnderSea's failure indicates

---

[12] *Id.*

[13] *Id.*

[14] *Id.*

[15] ECF 12 (UnderSea's response to Aug. 27, 2019 Order).

[16] ECF 11-2, at 3.

[17] *Id.*

that Madero's whereabouts are unknown. As such, pursuant to Article I, the Court finds that the Hague Convention does not apply. The Court is not aware of any further international agreements to which Mexico is a party that prohibit service by publication. Therefore, the Court finds service by publication is not prohibited by an international agreement in this case.

### c. Service by Publication Is Reasonably Calculated to Apprise Madero of This Action.

For the second element, federal courts have expressly recognized the validity of service by publication on an international defendant under similar circumstances when other means have failed. For example, in *Securities & Exchange Commission v. Tome*, the Second Circuit permitted the service on international defendants by publication in an internationally circulated newspaper and held:

> Where the plaintiff can show that deliberate avoidance and obstruction by the defendants have made the giving of notice impossible, statutes and caselaw have allowed substitute notice by mail and by publication in media of general and wide circulation. Thus, as business dealings have become increasingly interstate and international, the means of giving notice have been extended to meet these situations, so that parties may be held accountable in our courts of justice.

833 F.2d 1086, 1092–94 (2d Cir. 1987).

Relying on *Tome*, courts have held that service by publication on an international defendant may satisfy the standard set forth by the Supreme Court

in *Mullane v. Central Hanover Bank & Trust Co.*, "so long as a plaintiff reasonably calculates that the published notice is likely to come to the defendant's attention." *Sec. & Exch. Comm'n v. Anticevic*, No. 05 CV 6991 (KMW), 2009 WL 361739, at *4 (S.D.N.Y. Feb. 13, 2009) (citing *Tome*, 833 F.2d at 1093). *See also BP Prod. N. Am.*, 236 F.R.D. at 272 ("[I]t is clear that service by publication to a defendant in a foreign country is an acceptable alternative means under 4(f)(3), so long as diligent attempts have been made to locate the defendant and serve process by traditional means, and the publication is one that likely would reach the defendant."). This is particularly true if "the defendant already has actual knowledge of the suit." *Anticevic*, 2009 WL 361739, at *4 (citing *Islamic Emirate of Afghanistan*, 2001 WL 1658211, at *3 (permitting international service by publication on Osama Bin Laden). *See also U.S. Commodity Futures Trading Comm'n v. Lake Shore Asset Mgmt. Ltd.*, No. 07 C 3598, 2008 WL 4299771, at *4 (N.D. Ill. Sept. 17, 2008) ("[S]ervice by publication coupled with actual notice of this action is reasonably calculated, under all the circumstances, to apprise [international defendant] of the pendency of the action and afford him an opportunity to defend."). Moreover, international service by publication is appropriate "where a defendant's exact whereabouts are unknown." *Fletcher v. Wilson*, No. 2:08-cv-01844-RDP, 2017 WL 4167443, at *5 (N.D. Ala. Sept. 20, 2017). *See also Malone v. Highway Star Logistics, Inc.*, No. 08-cv-

01534-RPM-KLM, 2009 WL 2139857, at *2 (D. Colo. July 13, 2009) ("Plaintiff has shown that he took sufficient reasonable steps to serve [international defendants]. Any further attempts by the usual methods of service would be futile. Service by mail and publication is appropriate here.").

Here, the Court finds that it is reasonably calculated that service by publication would apprise Madero of this action. As stated above, UnderSea has diligently attempted to serve Madero through the Hague Convention, or otherwise locate Madero, but its current address is unknown and it has effectively evaded process to date. Service through publication is likely to reach Madero, as it is reasonable to believe Madero is aware of this pending litigation. The evidence presented by UnderSea indicates that Madero had full knowledge of its obligation to provide the $10 million in sovereign bonds under the contract it executed with UnderSea, as well as UnderSea's continued threats to commence litigation if Madero failed to oblige.[18] Nonetheless, Madero stated, in writing, to UnderSea: "Madero . . . [has] never intended to comply with the agreement we have with UnderSea . . . as long as [UnderSea] does not provide [additional] documents, Madero . . . will refrain to provide [sic] the agreed funds."[19] Based on this evidence,

---

18   ECF 12-4.

19   *Id.*

the Court finds that any further attempts at service on Madero through other methods would be futile.

Therefore, the Courts finds UnderSea has satisfied its burden of demonstrating that service by publication is sufficient to meet the constitutional requirements in this case pursuant to Rule 4(f)(3).

### III.   CONCLUSION

UnderSea's Motion for Service by Publication [ECF 11] is **GRANTED**. While the Federal Rules of Civil Procedure permit the Court to order service by publication pursuant to Rule 4(f)(3), they do not offer guidance on how that publication should be completed. Courts confronting this precise issue have looked to the forum state's law to determine how the service by publication should be effected. *Anticevic*, 2009 WL 361739, at \*5. *See also BP Prods. N. Am., Inc.*, 236 F.R.D. at 273 (ordering the plaintiff to serve process by publication in accordance with the dictates of forum state law). The Court agrees that Georgia law should govern in the instant case. As such, UnderSea must comply with the specific requirements regarding service by publication found in O.C.G.A. § 9-11-4. UnderSea is **DIRECTED** to arrange for the publication of this litigation in an appropriate legal periodical currently in circulation in Mexico under the same

restraints provided for by Georgia law. UnderSea is **DIRECTED** to contact the Clerk's office within 14 days for assistance in effecting service by publication.

**SO ORDERED** this the 19th day of May 2020.

_____
Steven D. Grimberg
United States District Court Judge
